THE PEOPLE EX REL. J. H. MAUPIN, ATTORNEY GENERAL, PETITIONERS, v. MACCABE, RESPONDENT.

1. CONDUCT OF ATTORNEYS.

The supreme court, having power by express law to grant a license to practice law, has an inherent right to see that the license is not abused or perverted to a use not contemplated by the grant.   The license is granted upon the implied understanding that the party receiving it shall at all times demean himself in a proper manner and abstain from such practices as cannot fail to bring discredit upon himself and the courts.

2. DIVORCE CASES.

An attorney may properly accept a retainer for the prosecution or defence of an action for divorce when convinced that his client has a

good cause, but to invite or encourage such litigation is most repre-
hensible.

3. Advertising for Divorce Cases.

An advertisement that divorces can be legally obtained very quietly which
shall be good everywhere, is the more mischievous, if anonymous;
such an advertisement is against good morals, public and private;
it is a false representation, and a libel upon the courts of justice.
An attorney may be disbarred or suspended for publishing such
advertisements.

4. Duty of Court in Disbarment Proceedings.

A court intrusted with the power to admit and disbar attorneys should
always be considerate and careful in exercising such jurisdiction;
the interests of the respondent must in every case be weighed
against the rights of the public; and the court should endeavor to
guard and protect both with fairness and impartiality.

### *Disbarment Proceeding in this Court.*

By statute no person is permitted to practice as an attorney
or counselor at law in the courts of record of this state with-
out having previously obtained a license for that purpose
from two or more justices of the supreme court, and having
his name inscribed on the roll of attorneys.

The supreme court is also empowered to strike the name
of an attorney or counselor at law from said roll for malcon-
duct in his office: 1 Mills' An. Stats. §§ 196–200.

In this proceeding the petition states that respondent, a
duly licensed attorney, has been guilty of malconduct in his
said office as an attorney and counselor at law, in that for a
long time immediately preceding the exhibiting of the petition
he had repeatedly published in a newspaper of large circu-
lation in the city of Denver the following advertisement:
"Divorces legally obtained very quietly; good everywhere.
Box 2344, Denver."

Respondent by his answer admits that he caused the adver-
tisement to be published as alleged in the petition. Cause
submitted upon petition and answer.

Mr. J. H. Maupin, attorney general, for petitioners.

ISAAC J. MACCABE, *pro se.*

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The ethics of the legal profession forbid that an attorney should advertise his talents or his skill as a shopkeeper advertises his wares.  An attorney may properly accept a retainer for the prosecution or defense of an action for divorce when convinced that his client has a good cause.  But for anyone to invite or encourage such litigation is most reprehensible. The marriage relation is too sacred—it affects too deeply the happiness of the family—it concerns too intimately the welfare of society—it lies too near the foundation of all good government, to be broken up or disturbed for slight or transient causes.

In the present case we are not called upon to deal with a matter of ordinary advertising, but with a peculiar kind of advertising.  Respondent did not advertise for business openly, giving his name and office address.  His advertisement was anonymous and well calculated to encourage people to make application for divorces who might otherwise have refrained from so doing.

When a lawyer advertises that divorces can be legally obtained very quietly, and that such divorces will be good everywhere, such advertisement is a strong inducement—a powerful temptation—to many persons to apply for divorces who would otherwise be deterred from taking such a step from a wholesome fear of public opinion.

The advertisement published by respondent says in effect: " If you are dissatisfied with your partner in life—if you desire a divorce—communicate with me, and your desire shall be gratified.  No one will know it.  You see I advertise anonymously.  I do not even subject myself to criticism. Everything will be done very quietly, and you will be able to sever the disagreeable marriage tie without public scandal, and, hence, without reproach."

The fear of public opinion is not the highest motive ; but it exercises a wholesome influence in many ways.  It is un-

doubtedly potent in preventing many suits for divorce; and, in most of such cases, not only the individuals directly concerned, but the circle of society in which they move, as well as society at large, are greatly benefited by the restraining influence of public opinion.

The advertisement published by respondent, to the effect that divorces could be legally obtained very quietly which should be good everywhere, was the more mischievous, because anonymous. Such an advertisement is against good morals, public and private; it is a false representation and a libel upon the courts of justice. Divorces cannot be legally obtained very quietly which shall be good anywhere. To say that divorces can be obtained very quietly is equivalent to saying that they can be obtained without publicity. Every lawyer knows that to obtain a legal divorce a public record must be made of the proceeding; the complaint must be filed; the summons must issue; process must be served upon the defendant either personally or by publication in a public newspaper; proof must also be taken; and a decree must be publicly rendered by the court having jurisdiction of the proceeding. All these public proceedings the statute imperatively requires; and for a lawyer by an advertisement to indicate that such public proceedings can or will be dispensed with by the courts having jurisdiction of such cases, is a libel upon the integrity of the judiciary that cannot be overlooked when brought to our notice.

In the case of *The People ex rel. v. Brown*, 17 Colo. 431, this court said:

" When this court grants a license to a person to practice law, the public, and every individual coming in contact with the licensee in his professional capacity, have a right to expect that he will demean himself with scrupulous propriety, as one commissioned to a high and honorable office. A person enjoying the rights and privileges of an attorney and counselor at law must also respect the duties and obligations of the position."

The case of *The People ex rel. v. Goodrich*, 79 Ills. 148,

was a disbarment proceeding under statutes from which ours were undoubtedly borrowed. Among other things, the complaint against Goodrich set forth that he had published advertisements without signature, representing that he could procure divorces without publicity, and by such advertisements solicited business of that character by communication through a particular post office box. The Goodrich case, though similar to the one before us, was more aggravated in some respects.

Mr. Justice Breese, in delivering the opinion of the court, said:

" This court, having power, by express law, to grant a license to practice law, has an inherent right to see that the license is not abused, or perverted to a use not contemplated in the grant. In granting the license, it was on the implied understanding that the party receiving it should, at all times, demean himself in a proper manner, and if not reflecting honor upon the court appointing him, by his professional conduct, he would at least abstain from such practices as could not fail to bring discredit upon himself and the courts. * * *

" The *morale* of defendant's professional conduct deserves special notice. He makes divorce cases a specialty. How many persons in our broad land weary of the chain that binds them ? How many are eager to seize upon the slightest twig that may appear to aid them in escaping from a supposed sea of troubles, in which wedded life has immersed them ? How many are fretting under imaginary ills, and what better devices than those practiced by this defendant could be contrived to increase these disquietudes, and stimulate to effort, by perjury, if need be, to free themselves from their supposed unhappy condition ? Is it desirable that divorce cases should accumulate in our courts ? If so, the defendant is justified in the means he has used, and is using to that end. An honorable, high-toned lawyer will always aid a deserving party seeking a divorce, as coming strictly within his professional duties. He will render the aid, not solicit the case ; and he will, in all things regarding it, act the man, and respect, not only his own professional reputation, but the character of the

courts, and discharge the unpleasant duty in all respects as an honorable attorney and counselor should do."

In his answer in this case respondent says in effect that in advertising for divorce business he did it in entire ignorance that it was wrong; that he ceased to so advertise in deference to the court upon the commencement of this proceeding; that if this court shall adjudge such advertising to be wrong or to be malconduct in office as an attorney within the meaning of the statute, he will cheerfully abide by and obey the directions of the court in the premises. In view of these statements in the answer, this being the first case of the kind brought in this court, we do not feel it incumbent upon us to perpetually deprive respondent from pursuing his business as an attorney. A court intrusted with the power to admit and disbar attorneys should be considerate and careful in exercising its jurisdiction; the interests of the respondent must in every case be weighed in the balance against the rights of the public; and the court should endeavor to guard and protect both with fairness and impartiality.

In this connection the words of Chief Justice Marshall in *Ex parte Burr*, 9 Wheaton, 168, are particularly appropriate:

" On the one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him. On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved. For these objects, some controlling power, some discretion, ought to reside in the court. This discretion ought to be exercised with great moderation and judgment; *but it must be exercised; and no other tribunal can decide, in a case of removal from the bar, with the same means of information as the court itself.*"

In view of all the circumstances of this case, the judgment of this court is that respondent MacCabe be and is hereby suspended from practice as an attorney and counselor at law for the period of six months from this date, and until the payment of all the costs of this proceeding.