In the Matter of the Application for Disciplinary Action Against Kenneth W. PETERSON, a Member of the Bar of the State of North Dakota.

No. 8642.

Supreme Court of North Dakota.

July 9, 1970.

Albert A. Wolf, Bismarck, for Grievance Commission of the Supreme Court.

Robert Vogel, of Vogel, Bair, Graff & Brown, Mandan, and James Morris, Bis-

marck, for respondent Kenneth W. Peterson.

STRUTZ, Judge.

This is a sequel to the case of In re Peterson, 175 N.W.2d 132 (N.D.1969). It is a disciplinary proceeding upon formal complaint based upon a charge of professional misconduct, praying for such disciplinary action against the respondent as justice shall dictate. The current charge is based upon an incident or incidents which occurred prior to the time of the conviction of the respondent on a charge of Federal income-tax evasion, which was the basis of the former disciplinary proceeding against him, but which was not included in the former proceeding. The complaint alleges that Peterson, who was the attorney for the estate of an intestate who died in 1961 without leaving legal heirs, suggested to the administrator of the estate both orally and by letter, that the assets of the estate be divided between them rather than that such residue be allowed to escheat to the State.

The answer of Peterson to the charge admits the conversation, but alleges that the suggestion was made in jest and not seriously. As to the letter which was written subsequent to the oral suggestion to the administrator, respondent asserts that he, at the time, was an alcoholic and that he has absolutely no recollection of writing or signing the letter; that if the signature affixed to such letter is, in fact, his signature, it was affixed during a period of alcoholism and at the request of his former wife, who at the time was his secretary, and that he did not read or know the contents of the letter; and that he absolutely denies having signed a second letter on the same subject. In this denial he is corroborated by a handwriting expert who testified by deposition for the Grievance Commission.

The respondent further asserts that he has completely abstained from the use of any alcoholic beverages since May 26, 1969; that he has been unable to engage in the practice of law for more than one year; and that the citizens of the community in which he resides are desirous of having him reinstated in the practice of his profession.

After issue was joined, the matter was referred by this court to the Honorable Eugene Coyne, a district judge, who was designated as referee to try the issues raised by the pleadings. Upon conclusion of the hearing, the referee filed with this court his findings of fact, conclusions of law, and recommendations. The testimony taken at the hearing before the referee has been transcribed and certified to this court. The matter was set for hearing, and oral arguments for and against the adoption of the report and recommendations were made in this court on June 30, 1970.

The report of the referee to this court includes a recommendation that the respondent's certificate of admission to the Bar of this State be suspended for an additional three months from and after June 17, 1970, the date of the expiration of the previous period of suspension made by this court in In re Peterson, *supra*. The referee further recommends that, at the expiration of such additional three months, the certificate of admission of the respondent be reinstated forthwith. A further recommendation was made that the respondent reimburse the State Bar Fund for all moneys expended in connection with this proceeding.

The facts, as shown by the testimony produced at the referee's hearing, disclose that, in 1961, and for some time prior thereto, the respondent had acted as attorney for the administrator of the Grant Baughman estate. Baughman had died intestate, leaving no known heirs at law. After payment of all expenses, a cash balance of more than $3,900 remained in the hands of the administrator. In the fall of 1961, the respondent met the administrator of the estate at a roadside restaurant and bar,

and their conversation eventually touched upon the estate and the disposition to be made of the residue in the hands of the administrator. Peterson suggested that the administrator forward such balance to him and that he, the respondent, would return one-half of such amount to the administrator.

A few days after this discussion was had, a letter over the signature of the respondent was mailed to the administrator, referring to this matter "which I confidentially discussed with you sometime ago," and stating that it would be appreciated if the administrator would forward his check to the respondent for the balance in the estate, payable to Peterson as State's Attorney. It was suggested that the administrator write on the lower left of the check, *"For*: In Trust." The letter then continued: "Upon receipt of the check, I will immediately forward you my check for one-half of the above amount." This letter, dated October 11, 1961, was postmarked October 13, 1961. A second letter, dated October 25, 1961, also was received by the administrator over the signature of Peterson. This second letter stated: "We would appreciate hearing from you in regard to our letter dated October 11, 1961."

As indicated, Peterson acknowledged the conversation which he had with the administrator in the bar, but insisted that his remark was made in jest, and not seriously. He further testified that he does not recall signing the letter of October 11, but that if he did sign it, it was written by his former wife, who was his secretary at the time, and that he did not read it; that his wife handled much of the office correspondence and often wrote letters which he had not dictated; that she would place such letters before him on his desk and that he often signed them without reading them; that, at the time, he was an alcoholic, and on the evening of October 12, 1961, he left his residence and flew to Minneapolis, where he entered an alcoholic-treatment center the following morning. He further asserts that he was not

in the State of North Dakota at the time the second letter was dated. A handwriting expert testified by deposition that, in his opinion, the signature on the letter of October 11 was that of the respondent, but that the signature on the letter of October 25 was not Peterson's.

The referee, in his findings, found that the letter of October 11 was signed by Peterson, but that, because of the nearness in time between the date of the letter of October 11 and his admission to an institution for treatment of alcoholics almost immediately thereafter, respondent may not have signed it knowingly and willfully. The referee also found that the respondent had experienced personal problems because of his alcoholism, but that he has overcome those problems and that he has drunk no intoxicating beverages for more than one year.

■ It is the duty of the Supreme Court to maintain the integrity of the legal profession by disbarring or suspending lawyers who indulge in conduct which is designed to bring the courts or the legal profession into disrepute, or to perpetrate a fraud upon the courts. It has been held that an attorney's lack of integrity in handling funds of a client disqualifies him as an attorney and justifies his disbarment or suspension. In re Rice, 241 Minn. 386, 63 N.W.2d 41 (1954). It has also been held that an attorney may be disbarred for requesting a bribe. In re Ruby, 328 Mass. 542, 105 N.E.2d 234 (1952); In re Falzone, 240 Mo.App. 877, 220 S.W.2d 765 (1949).

■ The admitted conduct of the respondent in suggesting that he and the administrator divide the money in the estate which he was handling was sufficient to justify disciplinary action. He now claims that this suggestion was made in jest. An attorney who realizes the responsibility of his position would not jest about so serious a matter. But it was not only the oral suggestion which was made. His suggestion was followed by a letter, which the

respondent himself signed, urging that the suggestion which had been made be carried out. He now says that this letter was written by his former wife, who then was his secretary, and that he does not remember signing it. However, respondent was in charge of his office and was responsible for the conduct of business in that place.

■ There are mitigating circumstances, as pointed out by the referee, which favor the respondent. Generally, all charges of professional misconduct should be included in any complaint made against an attorney, and each act of professional misconduct should not be made the basis of separate charges. Disciplinary proceedings for professional misconduct should be prosecuted with promptness. In re Williams, 221 Minn. 554, 23 N.W.2d 4 (1946).

In this case, the incident which forms the basis for the present charge against the respondent did not come to light until the former hearing was being held, and therefore it was not included in the charges in that proceeding. However, because of the seriousness of the charge, members of the Grievance Commission concluded that it should be brought to the attention of this court. We believe their conclusion was correct.

■ Disciplinary proceedings against an attorney are not brought for the purpose of punishing the attorney but to determine, in the public interest, whether such attorney should be permitted to continue to practice law. State ex rel. Nebraska Bar Association v. Palmer, 160 Neb. 786, 71 N.W.2d 491 (1955). The purpose of such proceedings should be to protect the public from lawyers who fail to maintain the required standard of fitness. In re Goodrich, 78 S.D. 8, 98 N.W.2d 125 (1959).

It is obvious that much of the respondent's difficulty stems from his use of alcoholic beverages. The referee's findings show that the respondent now has totally abstained from the use of alcoholic beverages for more than one year. His report also shows that the people of the community in which the respondent resides favor his reinstatement as an attorney.

The prior order suspending the certificate of admission of the respondent to the Bar of the State of North Dakota provided that he be permitted to make application for reinstatement after the period of suspension fixed therein, which period expired on June 17, 1970. However, at the time of hearing on the referee's report, no application for reinstatement had been filed because of the filing of the additional charge of professional misconduct against the respondent. The recommendation of the referee that the suspension of the respondent's certificate of admission be continued for an additional three months from and after June 17, 1970, and "that respondent forthwith thereafter be reinstated as an attorney and counselor at law," cannot be made effective because it does not comply with the reinstatement proceedings as provided for in rule XIII of the Supreme Court Rules of Disciplinary Procedure. That rule reads:

"Any attorney who shall have been disbarred or suspended may by verified petition, after the expiration of one year or such time as may be fixed by the court, apply for:

"1. An order of reinstatement;

"2. An order shortening the term of a fixed period of suspension, or

"3. An order modifying an order of indefinite suspension by fixing a definite period of suspension.

\*    \*    \*    \*    \*    \*

The procedure for reinstatement then follows the statement of the rule. Such procedure includes securing the report and recommendation of the Grievance Commission, which report and recommendation may be accepted or rejected by the court, which also may, in its discretion, set up a hearing on the report. Under the Supreme Court Rules of Disciplinary Procedure, all of this must occur after the expiration of the

period of suspension or at "such time as may be fixed by the court."

In order to give effect to the recommendation of the referee, which is that the respondent be suspended for an additional period of three months after June 17, 1970, and that he thereupon be reinstated, this court, under Rule XIII(1) of the Supreme Court Rules of Disciplinary Procedure, hereby authorizes the respondent to file his application forthwith for an order of reinstatement, which reinstatement so applied for, if approved, shall be effective at the expiration of three months after June 17, 1970; that upon receipt of a verified petition for an order of reinstatement, the clerk of this court shall immediately forward copy thereof to the Grievance Commission, and further proceedings shall be had as provided by rule; that the expenses of the Grievance Commission and the expenses of trial are hereby assessed against the respondent, in an amount to be certified to this court by the Grievance Commission.

The certificate of admission of the respondent to the State Bar of North Dakota is suspended for an additional three months from and after June 17, 1970, subject to further proceedings as are provided for herein.

It is so ordered.

TEIGEN, C. J., and PAULSON and KNUDSON, JJ., concur.

ERICKSTAD, J., was not present at the hearing on the Referee's report and did not participate in this decision.